1  BENJAMIN B. WAGNER
   United States Attorney
2  SYLVIA A. QUAST
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2740

5  Attorneys for Defendants

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 TIMBISHA SHOSHONE TRIBE;            )
   ED BEAMAN; CLEVELAND CASEY;         )   Case No. 1:09-cv-02230-LJO-SMS
12 VIRGINIA BECK; GEORGE GHOLSON;      )
   MARGARET CORTEZ; and                )
13 BILL EDDY,                          )   **DEFENDANTS' OPPOSITION TO**
                                       )   **PLAINTIFFS' MOTION FOR**
14              Plaintiffs,            )   **PRELIMINARY INJUNCTION**
                                       )
15         v.                          )
                                       )   Date:  March 15, 2010
16 KEN SALAZAR; LARRY ECHO HAWK;       )   Time:  8:30 a.m.
   DALE MORRIS; TROY BURDICK; and      )   Ctrm:  4
17 UNITED STATES DEPARTMENT OF         )   Hon. Lawrence J. O'Neill
   THE INTERIOR,                       )
18                                     )
                Defendants.            )
19 _____)

20                          **INTRODUCTION**

21         Since 2007, the Timbisha Shoshone Tribe has been locked in a tribal leadership dispute

22 between two factions, both of which have been holding separate Tribal elections as recently as

23 last November. Plaintiffs are leaders of the faction that is based in Bishop, California ("Bishop

24 faction"), while the other faction is based in Death Valley, California ("Death Valley faction").

25 This is the third lawsuit in the last fifteen months in which one faction or the other has sued

26 various officials of the Department of the Interior ("Department") and the Department's Bureau

27 of Indian Affairs ("BIA"), seeking this Court's intervention in ongoing Department

28

administrative proceedings in which both factions are parties.[1] In this latest lawsuit, Plaintiffs seek to have this Court declare ongoing administrative appeals moot, order the Department not to address administratively issues concerning purported disenrollments of Tribal members or appeals from the November 2009 elections, and compel the Department to recognize the results of one of the November 2009 Tribal Council elections. Complaint for Declaratory and Injunctive Relief ("Complaint") ¶¶ 2-4. Opening briefs in the administrative appeals are due March 19, and the Department anticipates releasing its final decision by June 29 of this year. Accordingly, this Court should deny Plaintiffs' Motion for Preliminary Injunction ("Motion") and dismiss their Complaint because it lacks jurisdiction over Plaintiffs' claims – Plaintiffs fail to challenge a final agency action and their claims are not ripe in any event, and Plaintiffs have not exhausted their administrative remedies. Plaintiffs offer no argument in support of their assertions that they are likely to prevail on the merits, nor are they likely to do so, and the balance of the equities and the public interest tips in the Defendants' favor.

## REGULATORY AND FACTUAL BACKGROUND

### BIA Administrative Appeals Process

Part 2 of Title 25 of the Code of Federal Regulations contains the administrative appeal procedures regarding decisions of BIA officials. *See* 25 C.F.R. § 2.3. As part of these procedures, the regulations establish a hierarchy of who will decide which appeals and under which circumstances. For example, if the decision of a BIA official under the authority of a Regional Director (formerly known as an "Area Director") adversely affects a person, that person may appeal the decision to the Regional Director. 25 C.F.R. § 2.4(a). If a Regional Director's decision adversely affects a person, that person may appeal to the Interior Board of Indian

---

[1] *See Timbisha Shoshone Tribe v. Kempthorne*, Case No. 2:08-CV-3060 MCE DAD ("*Timbisha I*") (plaintiffs were Death Valley faction leaders -- case voluntarily dismissed); and *Timbisha Shoshone Tribe v. Salazar*, Case No. 2:09-CV-0246 MCE DAD ("*Timbisha II*") (plaintiffs almost the same as here – case dismissed as moot when BIA decided an appeal brought by plaintiffs). Plaintiffs Beaman, Beck, and Casey have also sued leaders of the Death Valley faction in a related case before this Court. *Timbisha Shoshone Tribe v. Kennedy*, Case No. 1:09-CV-1248 LJO SMS ("*Timbisha III*").

Appeals ("IBIA"). 25 C.F.R. § 2.4(e). However, the Assistant Secretary-Indian Affairs for the Department of the Interior ("Assistant Secretary") has the authority to take jurisdiction over an IBIA appeal within 15 days of receiving the notice of appeal. 25 C.F.R. §§ 2.4(c), 2.20.

If the Assistant Secretary opts to take jurisdiction of an appeal, he is to issue a decision in the appeal within 60 days after all time for pleadings has expired. 25 C.F.R. § 2.20(c). Unless provided otherwise in the decision, the decision is final for the Department and immediately effective. 25 C.F.R. § 2.20(c). If the Assistant Secretary does not make a decision within the 60 day timeframe, any party to the appeal may move the IBIA to assume jurisdiction over the appeal. 25 C.F.R. § 2.20(c).

Pursuant to 25 C.F.R. § 2.6(a) and 43 C.F.R. § 4.314, a BIA decision that is subject to appeal to a higher authority in the Department is stayed pending administrative review and is not final agency action unless a determination is made "that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately." *See also* 25 C.F.R. § 2.6(b) ("Decisions made by officials of the Bureau of Indian Affairs shall be effective when the time for filing a notice of appeal has expired and no notice of appeal has been filed"), and 43 C.F.R. § 4.314(a) ("No decision of . . . a BIA official . . . will be considered final [and] subject to judicial review. . ., unless it has been made effective pending a decision on appeal by order of the [IBIA].")

**Recent Events in the Ongoing Dispute over Control of the Tribe**

The Timbisha Shoshone Tribe is a federally-recognized tribe. 73 Fed. Reg. 18,553-01 (April 4, 20080. As evidenced by the stack of exhibits attached to the Complaint, it has been riven by factional disputes for years. *See also* Complaint ¶ 19 ("The Timbisha Shoshone Tribe's history of internal disputes has spanned more than decade [*sic*]"); *Timbisha Shoshone Tribe v. Bureau of Indian Affairs*, Case No. 2:03-0404 WBS GGH. This Court has given a detailed account of the most recent dispute giving rise to this action, as well as the three other *Timbisha* actions filed in the last fifteen months, in its November 3, 2009 Order on Plaintiffs' Preliminary

Injunction ("November 3 Order") in *Timbisha III*.[2] A similar account may be found in Defendants' Motion to Dismiss (Docket # 49 at 2-5) in *Timbisha II*. Rather than repeat this factual history yet again, Defendants here will focus on the ongoing administrative appeals that are the subject of this action and the November 2009 parallel Tribal elections.

On June 22, 2009, the Assistant Secretary-Indian Affairs consolidated two administrative appeals, pursuant to 25 C.F.R. § 2.18. Complaint Exhibit I. In the first appeal, filed February 28, 2009, the leaders of the Death Valley faction challenged the BIA Regional Director's February 17, 2009, decision rejecting the constitutionality of actions taken by that faction. *Id.* In the second appeal, filed April 24, 2009, leaders of the Bishop faction, including plaintiffs Gholson and Cortez, challenged the BIA Regional Director's March 24, 2009, decision rejecting action taken by the Bishop faction.[3] *Id.* Although both appeals were to the IBIA, the Assistant Secretary took jurisdiction over them pursuant to 25 C.F.R. § 2.20. *Id.* The Assistant Secretary's June 22 order established a schedule for filing objections to the administrative record and briefing of the case. *Id.* It further stated that the Assistant Secretary would issue his decision within 60 days of the close of all briefing, and that his decision would be final for the Department and effective immediately. *Id.*

After receiving a request from one of the factions to extend the deadline for comments on the administrative record and to have the briefing begin after the comments were addressed, a request to which counsel for Plaintiffs Gholson and Cortez consented, the Assistant Secretary extended the deadlines on the appeals. Declaration of James Porter in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Porter Declaration") Exhibit A. The parties then filed numerous objections to the administrative record in terms of its contents and format, and also filed motions to supplement the record. Porter Declaration ¶ 4. The Department has since resolved the objections to the record, and on February 19, 2010, the

---

[2]This Court may take judicial notice of court filings from other cases in considering this case. *Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006)

[3]Defendants are informed that the appellants in this administrative appeal plan to formally withdraw it.

1  Assistant Secretary ordered that the opening briefs on the consolidated appeals be filed by March
2  19, 2010. *Id.* and Exhibit B. Briefing is scheduled to close on April 30, 2010, and the Assistant
3  Secretary will issue his decision within 60 days of receiving the last filing. *Id.* In the same order,
4  the Assistant Secretary urged the competing factions to hold a unified election, and offered
5  support to accomplish the goal of putting a functioning, recognized Tribal government in place.
6  *Id.*
7  Meanwhile, in November 2009, the rival factions held another round of competing
8  elections. Complaint ¶ 2; Motion at 2. Plaintiffs Beck, Casey, Gholson, Eddy, and Cortez were
9  elected in the Bishop faction's election, while Joe Kennedy, Madeline Esteves, Angela Boland,
10 Grace Goad, and Erick Mason were elected in the Death Valley faction's election. Complaint ¶¶
11 10-14; *Timbisha III*, Court Docket # 44 (Exhibit A to Declaration, pp 3-4).

## ARGUMENT

### I. Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008). To obtain an injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374. The court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 376 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542, 107 S. Ct. 1396 (1987)). The public interest may preclude an injunction even if the other requirements are satisfied. *Winter*, 129 S. Ct. at 381. *See also Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982); *Lands Council v. McNair*, 537 F.3d 981, 1003-04 (9th Cir. 2008) (en banc).

Plaintiffs suggest that this Court may apply a lesser standard than that set forth in *Winter*. *See* Memo at 7, 9. This is erroneous, as the Court pointed out in the November 3 Order. November 3 Order at 11, n.4. Moreover, the Supreme Court has explicitly rejected the claim that "serious questions going to the merits" are enough to support granting a preliminary injunction.

1  *See Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008) (injunction may not properly issue based on
2  "questions so serious, substantial, difficult and doubtful, as to make them fair ground for
3  litigation and thus for more deliberative investigation. . . [Instead,] a party seeking a preliminary
4  injunction must demonstrate, among other things, 'a likelihood of success on the
5  merits.'"(quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418,
6  428 (2006))).

## II. Plaintiffs Are Unlikely To Prevail On The Merits.

### A. This Court Lacks Jurisdiction Over Plaintiffs' Claims Because They Do Not Challenge Any Final Agency Action.

Plaintiffs' Complaint contains four claims, all of which arise out of the Department's processing of the ongoing administrative actions: (1) unreasonable delay of agency action, (2) breach of the government's trust responsibility to Indian tribes, (3) violation of the Administrative Procedure Act ("APA"), and (4) potential violation of Department's appeal regulations. Complaint ¶¶ 39-56. Even though establishing a likelihood of success on the merits is essential to obtain a preliminary injunction, Plaintiffs make only a few unsupported assertions on this issue and fail to offer a single argument on the merits of any of their claims. Plaintiff's Memorandum of Points and Authorities in Support of Their Motion for Declaratory Relief and Preliminary Injunction [*sic*] ("Memo") at 9. This alone is sufficient reason to deny their motion. *Winters*, 129 S. Ct. at 374. Moreover, as shown below, Plaintiffs are not likely to prevail on any of their claims, as the Court lacks jurisdiction over them.

Section 706(2) of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). However, to obtain review under this provision of the APA, plaintiffs must challenge a final agency action pursuant to 5 U.S.C. § 704. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir.2006). The question of finality under the APA is jurisdictional. *Id.*, citing *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) Each of the claims in the Complaint challenge agency actions, but none of the

challenged actions are final. For example, the Third Claim, entitled "Violation of the Administrative Procedures Act," as well as the First and Second Claims, all fault the way that the Department is handling the consolidated appeals, yet the Department has taken no final agency action with regard to those appeals. These claims also challenge the propriety of the underlying BIA decisions that are the subject of the consolidated appeals (Complaint ¶¶ 41, 46, 49), but none of these decisions are final either. *See* 25 C.F.R. § 2.6(a) (BIA decisions subject to appeal to higher Departmental authority not final). The lack of final agency action is most obvious in the Fourth Claim, which is focused solely on a "proposed agency review" that the Department allegedly "intends" to undertake. *See* Complaint ¶¶ 52-56. Accordingly, this Court lacks jurisdiction over Plaintiffs' Claims.

In an attempt to evade the finality requirement for APA actions, Plaintiffs assert that the Department has "unreasonably delayed" agency action. Complaint ¶¶ 40-44. *See* 5 U.S.C. § 706(1) (a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed"). In fact, the first appeal of the consolidated appeals was filed one year ago, the second appeal was filed in late April of last year, and the Department consolidated the appeals in June and established a schedule to finalize the administrative record and brief the appeals. Porter Declaration Exhibit A. The Department has now resolved the factions' numerous objections to the administrative record as well as their motions to supplement the record, and the parties' briefs are due March 19, four days after the hearing on this motion. Porter Declaration Exhibit B. The Department anticipates issuing a final decision by June 29 of this year. *Id.* Plaintiffs have offered no argument to support their assertion that this constitutes unreasonable delay for purposes of the APA, and this Court should follow the Ninth Circuit's lead and "refuse[] to allow plaintiffs to evade the finality requirement with complaints about the sufficiency of an agency action dressed up as an agency's failure to act." *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 926 (9th Cir. 1999).

**B.    Plaintiffs' Claims Are Not Ripe.**

Every claim before a federal court must meet minimum constitutional requirements for jurisdiction, such as ripeness. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993); *City of*

*Rialto v. W. Cost Loading Corp.*, 581 F.3d 865, 875 (9th Cir. 2009). The ripeness doctrine serves "'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803-807-08 (2003), quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). *See also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 779-80 (9th Cir. 2000). The prudential aspect of ripeness requires assessing "'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* (internal quotation omitted). It is Plaintiffs' burden to establish ripeness. *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

The issues in this case are not fit for judicial decision. At bottom, Plaintiffs' Complaint seeks to entangle this Court in the ongoing administrative proceedings regarding the internal Tribal leadership disputes, including an administrative appeal that some of the Plaintiffs themselves initiated. *See, e.g.*, Complaint ¶¶ 43, 46, 49, 53, and Prayer for Relief. It also seeks to prevent administrative actions that have not yet been taken and may never be taken. *See, e.g.*, Complaint ¶¶ 4, 5, 52-56. As already noted, the Assistant Secretary anticipates issuing a decision by the end of June after the parties have completed briefing. Porter Declaration Exhibit B. When he issues his decision, it will be final for the Department. At that time, Plaintiffs can pursue judicial review as appropriate, and the reviewing court will have a fully developed record and concrete issues to consider, rather than speculation about what the Assistant Secretary might or might not do in the course of resolving the matters before him. Wading into the internal Tribal leadership disputes before the Assistant Secretary formalizes his decision would constitute precisely the type of judicial interference that the Supreme Court warned against in *Abbott Laboratories*.[4]

---

[4] Plaintiffs repeatedly cite 28 U.S.C. § 1651, which is a provision for a writ of mandamus. Complaint ¶¶ 44, 47, 50, 56. Exercise of this extraordinary remedy is justified only in
(cont'd....)

1  Nor can Plaintiffs show that postponing review imposes a hardship on them "that is
2  immediate, direct, and significant." *Colwell*, 558 F.3d at 1128. Indeed, Plaintiffs themselves
3  noticed this Motion for hearing over two months after they filed it, which undermines any claim
4  they may assert about immediate harm. Any hardship that they might claim to suffer will not
5  outweigh the Court's and the agencies' interest in waiting to review a final decision on a fully-
6  developed record. *Id* at 1129.

### C. Plaintiffs Have Failed to Exhaust Their Administrative Remedies.

As discussed above, judicial review, if any, is only available for those agency decisions that are final. 5 U.S.C. § 704; *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677-78 (9th Cir. 1988). Decisions made by BIA officials, such as the recognition of a tribal council during the pendency of appeals, must be appealed up to and through the IBIA or, as is the case here, the Assistant Secretary before they are final for purposes of judicial review. 25 C.F.R. §§ 2.1-.21; 43 C.F.R. Subparts A, B, and §§ 4.310-.318, 4.330-.340. It is well settled that when an "agency rule dictates that exhaustion of administrative remedies is required, the federal courts may not assert jurisdiction to review agency action until the administrative appeals are made complete." *White Mountain Apache Tribe*, 840 F.2d at 677-78. The Ninth Circuit has repeatedly and consistently applied this rule to BIA and Departmental decisions. *Id. Stock West Corp. v. Lujan*, 982 F.2d 1389, 1393-94 (9th Cir. 1993); *Joint Bd. of Control v. United States*, 862 F.2d 195, 199-201 (9th Cir. 1988); *Faras v. Hodel*, 845 F.2d 202, 204 (9th Cir. 1988). As a result, this Court does not have jurisdiction to declare the consolidated appeals moot or to tell the Department how to conduct those appeals.

Exhaustion of remedies is a well-established doctrine of administrative law, which serves the purpose of giving the agency an opportunity to correct its own mistakes and also promotes efficiency, since "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford v. Ngo*, 548 U.S. 81,

---

(....cont'd)
exceptional circumstances, and Plaintiffs have made no effort to show that such circumstances obtain here. *See United States. v. Romero-Ochoa*, 554 F.3d 833, 839-40 (9th Cir. 2009).

89 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Because Plaintiffs did not exhaust their administrative remedies, this Court should dismiss this action.[5]

### III. The Balance of Equities and the Public Interest Favors Denial of an Injunction.

For the foregoing reasons, Plaintiffs cannot establish that they are likely to succeed on the merits. This is sufficient grounds for denying their motion for a preliminary injunction. *Winters*, 129 S. Ct. at 374.

Balancing the equities and the public interest would tip the balance in the Department's favor in any event. *Id.* Plaintiffs are requesting that this Court order the Defendants to "recognize one of the two General Elections held on November 10, 2009, and recognize the decisions made by a governing majority of the Tribal Council." Motion at 2. Such an order would be a mandatory injunction going well beyond maintaining the status quo and, as such, is particularly disfavored. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484 (1996); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009); *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979). In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Anderson*, 612 F.2d at 1115 (internal quotation omitted). Here, Plaintiffs have offered no basis for being entitled to this relief under any cause of action. Moreover, the federal courts have encouraged self-government on the part of tribes, and at least since the Supreme Court's ruling in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S. Ct. 1670 (1978), have been extremely reluctant to meddle in intratribal decisions. Wading into the question of which of the 2009 Tribal Councils should be recognized would entangle this Court in just these sorts of issues. It would

---

[5]In *Nken v. Holder*, 129 S. Ct. 1749 (2009), which Plaintiffs cite at Memo 6-7 regarding jurisdiction, there was no question that petitioner, an immigrant facing removal from the United States, had exhausted his administrative remedies, that there was final agency action, and that the federal courts had jurisdiction over his petition. Such is not the case here.

also encourage parties to attempt "end runs" of Departmental administrative processes that they feared might not go their way, which would be wasteful for all concerned. Accordingly, the Court should reject Plaintiffs' request.[6]

Much of Plaintiffs' claimed harm is due to lack of funds for services for Tribal members, but equity does not favor those who come late and then with self-inflicted harm. As the November 3 Order at 8-9 makes clear, it is the two factions, including Plaintiffs in this case, which have been freezing various Tribal bank accounts since 2007, making it impossible to distribute state and federal funds that the Tribe continues to receive. As a result, the Court should reject Plaintiffs' largely unsupported claims that it is Defendants' fault, and not their own, that Tribal members are not getting the benefit of those funds. Memo at 6, 8. *See also Timbisha III* November 3 Order at 20-21 (noting evidence that Plaintiffs Beaman, Beck, and Casey's actions caused harms that they complain of here). Although the Department hopes that its forthcoming decision in the consolidated appeals will alleviate these issues, it is not optimistic.[7] In addition, Plaintiffs' assertion that "the Tribe's ability to participate in litigation and other official proceedings has been seriously undermined" is itself undermined by the fact that they have instituted three lawsuits and an administrative appeal in the last year or so. Memo at 9.

Plaintiffs also assert that "Tribal members have been denied their civil rights because the Defendant has given them no opportunity to challenge" purported disenrollment by other members of the Tribe. Memo at 8. The case they cite in support of this proposition, *Sweet v.*

---

[6] An essential attribute of tribal self-government is the right to determine whether and how to resolve intratribal disputes. *Santa Clara Pueblo*, 436 U.S. at 59-60. Accordingly, Defendants' role in a tribal election dispute is threefold: (1) to identify the group with which to conduct government-to-government business, *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983); (2) where an appeal is submitted challenging the government's recognition of a particular council, to render a reasoned, supported decision on the appeal; and (3) when requested, to assist the tribes in mediating the dispute. It has done (1), is in the process of doing (2), and stands ready to do (3).

[7] Significantly, Plaintiffs have not applied to the Department to require the leaders of the Death Valley faction to post an appeal bond. 25 C.F.R. § 2.5 (permitting individuals who believe the financial interests of an Indian tribe may be in jeopardy to request that appellants be required to post "a reasonable bond. . .adequate to protect against that financial loss.")

1 | *Hinzman*, 2009 WL 1175647 (W.D. Wash., April 30, 2009), involved a lawsuit between
2 | members of a Tribe, and did not involve the federal government. Defendants here did not
3 | disenroll anyone and *Sweet* does not require that Defendants provide an opportunity to challenge
4 | disenrollments they were not involved in.

5 | The balance of the equities and the public interest tips decidedly in favor of maintaining
6 | the *status quo ante*, which in this case means allowing the administrative process to continue and
7 | to culminate in a final decision. The Department is committed to developing a complete record
8 | and making a reasoned – and final – decision quickly. Porter Declaration ¶4 and Exhibit B. It
9 | should be allowed to do so.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion and dismiss this case.

DATED: March 1, 2010          BENJAMIN B. WAGNER
                              United States Attorney

                         By:  /s/ Sylvia Quast
                              SYLVIA QUAST
                              Assistant U.S. Attorney