# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMBISHA SHOSHONE TRIBE, EDWARD BEAMAN, VIRGINIA BECK, CLEAVELAND LYLE CASEY, GEORGE GHOLSON, MARGARET CORTEZ, and BILL EDDY,<br><br>Plaintiffs,<br><br>vs.<br><br>KEN SALAZAR, Secretary of the Interior, LARRY ECHO HAWK, Assistant Secretary of the Bureau of Indian Affairs, DALE MORRIS, Regional Director, Pacific Regional Office, Bureau of Indian Affairs, and the UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants.<br>_____/ | CASE NO. CV F 09-2230 LJO SMS<br><br>**ORDER ON PLAINTIFFS' PRELIMINARY INJUNCTION MOTION** (Doc. 11) |

## INTRODUCTION

Plaintiffs Timbisha Shoshone Tribe ("Tribe"),[1] Edward Beaman ("Mr. Beaman"), Virginia Beck ("Ms. Beck"), Cleaveland Lyle Casey ("Mr. Casey"), George Gholson ("Mr. Gholson"), Margaret Cortez ("Ms. Cortez), and Bill Eddy ("Mr. Eddy") (collectively "Plaintiffs") move for a preliminary injunction, pursuant to Fed. R. Civ. P. 65, against federal defendants Ken Salazar, Larry Echo Hawk, Dale Morris,

---

[1] The Timbisha Shoshone Tribe is a federally-recognized tribe. 73 Fed. Reg. 18, 553-01. The status of the Tribe, its members, and its Tribal Council are in dispute. Accordingly, the Tribe's identity as a "plaintiff" is based on the complaint filed in this action and shall not be construed as this Court's expression of any view on the status of the Tribal Council or whether the Tribe authorized this action to be filed in its name.

1

and the United States Department of the Interior (collectively "the BIA"). Plaintiffs seek an order from this Court to: (1) require the BIA to recognize one of the two November 10, 2009 Tribe General Elections; (2) require the BIA to recognize the validity of Plaintiffs' actions since 2007; (3) enjoin the BIA from reviewing or making decisions regarding the alleged disenrollment of Plaintiffs from the Tribe; (4) declare that all pending appeals and proceedings between the Tribe and the BIA are moot; and (5) declare that the BIA's failure to decide the administrative appeals in a timely manner constitutes agency action that is unreasonably delayed or unlawfully withheld. For the following reasons, this Court DENIES Plaintiffs' motion for preliminary injunction.

## BACKGROUND

The instant action is the third in a series of federal district court actions filed by the Tribe against the BIA. *See, Timbisha Shoshone Tribe v. Kempthorne*, Case No. 2:08-CV-0360 MCE DAD. RJN, Ex. 24-25 ("*Timbisha I*") (case dismissed voluntarily); *Timbisha Shoshone Tribe v. Salazar*, Case No. 2:09-CV-246 MCE DAD ("*Timbisha II*") (case dismissed as moot when BIA decided an appeal bought by Plaintiffs). A more comprehensive background of the dispute is detailed in *Timbisha Shoshone Tribe v. Kennedy*, – F.Supp.2d —, 2009 WL 3615971 (E.D.Cal. 2009) ("*Timbisha III*"). The Court presents the facts relevant to this motion here.

Since 2007, dueling factions have contested the governance of the Tribe fiercely.[2] The last undisputed Tribal Council election occurred in November 2006. The Tribal Council elected in November 2006 consisted of: Joseph Kennedy ("Mr. Kennedy"), Mr. Beaman, Ms. Casey, Mr. Casey and Ms. Beck (collectively "Rollback Council"). A dispute erupted at an August 25, 2007 meeting of the Rollback Council, resulting in the emergence of two competing factions. Plaintiffs are associated with the faction based out of Bishop, California ("Bishop faction"). The Bishop faction is led by Ms. Beck and Mr. Beaman. The other faction, based out of Death Valley, California ("Death Valley faction"), is led by Mr. Kennedy. The Bishop and Death Valley factions have held separate elections, and run parallel and competing tribal governments, since the August 2007 Rollback Council meeting. Each faction disputes the actions and validity of the other, and both have appealed to the BIA.

---

[2] The battle for tribal governance has spanned more than a decade. A prior dispute in tribal leadership was resolved through arbitration in 2004.

2

## Consolidated Appeals

Two consolidated and unresolved appeals are ostensibly the subject of this current action. On June 22, 2009, defendant Larry Echo Hawk, Assistant Secretary-Indian Affairs, consolidated the appeals from defendant Regional Director Dale Morris' February and March 2009 decisions, pursuant to 25 C.F.R. §2.18. Director Morris' February 2009 decision reversed a February 29, 2008 decision to find, among other things, that the actions at the August 2007 meeting to remove Ms. Beck and Mr. Beaman violated tribal law. Director Morris' March 2009 decision reversed an October 17, 2008 decision, and concluded that the Bishop faction's removal of Mr. Kennedy was improper. In each decision, Director Morris concluded that he was unable to establish that any subsequent tribal councils were formed properly. Accordingly, Director Morris continued to recognize the last undisputed tribal council for government-to-government purposes; namely, the Rollback Council.

The Death Valley faction requested to extend the briefing deadline on the consolidated appeals to allow for comments on the administrative record. Plaintiffs Mr. Gholson and Mr. Cortez agreed to continue the briefing schedule until the BIA considered the parties' comments to the administrative record. The parties, including Plaintiffs, then filed numerous objections to the administrative record and moved to supplement the record. The BIA resolved the motions and objections. In addition, the BIA undertook to reorganize the administrative record because of difficulties experiences by all parties.

With the administrative record organized and related issues and motions resolved, the BIA set a briefing schedule on February 19, 2010. Porter Decl., Ex. B ("Scheduling Order"). Opening briefs on the appeals are on March 19, 2010. Briefing will close April 30, 2010. Pursuant to 25 C.F.R. §2.20(c), the BIA will issue its decision within 60 days of receiving the last filing. Accordingly, the BIA expects to issue a decision on the appeals no later than June 29, 2010.

## Post-Appeal Actions

### Disenrollment

On December 27, 2008, the 2008 Death Valley Tribal Council purportedly disenrolled Plaintiffs, among others, from the Tribe. Plaintiffs do not recognize this disenrollment and seek an order from this Court to enjoin the BIA from reviewing or making decisions regarding the alleged disenrollment of Plaintiffs from the Tribe. In the Briefing Order, the BIA acknowledged the purported:

> Subsequent to the consolidation of these appeals, information was submitted purporting to show that 74 members of the Timbisha Shoshone Tribe have been disenrolled. I acknowledge and support the well-settled presumption that enrollment matters are one of the most central manifestations of tribal sovereignty, beyond the Federal Government's jurisdiction. But the validity of the representatives purporting to represent the tribe in government-to-government dealings with the United States is a threshold matter. In light of the fact that the Department does not recognize the Tribal Council that approved the Enrollment Committee's disenrollment recommendations, I cannot give any weight to the disenrollments approved by that Tribal Council.

### November 2009 Elections

Pursuant to Tribal law, elections are held each November. On November 10, 2009, the Bishop faction elected a new Tribal Council, consisting of Ms. Beck, Mr. Casey, Mr. Gholson, Mr. Eddy, and Ms. Cortez. The Death Valley faction held a parallel election to elect a separate Death Valley Tribal Council in November 2009. The terms of all members of the Rollback Council have expired.

### Instant Action

Plaintiffs contend that the factional dispute "has become a paralytic event due solely to the [BIA]'s mismanagement, incompetence and bias in handling its duties." Plaintiffs argue that the BIA "has haphazardly stymied, stalled, and stopped the Timbisha Shoshone from resolving internal issues through a series of decisions, reversals, and incomprehensible delays." Plaintiffs initiated this action based on the BIA's "failure to comply with its regulations, breach of trust responsibilities, and failure to maintain government-to-government relations with a federally-recognized tribe." Plaintiffs December 23, 2009 complaint for declaratory and injunctive relief seeks the following "claims for relief:" (1) agency decisions unreasonably delayed; (2) breach of trust responsibility, for failure to accept appeals based on determinable issues of fact or law and failure to decide appeals in a reasonable time; (3) violation of the Administrative Procedures Act for failure to accept appeals based on a determined issue of fact or law and failure to decide appeals in a reasonable time; and (4) proposed agency review of purported disenrollment would violate due process rights.

On January 5, 2010, Plaintiffs moved for a preliminary injunction, noticing a hearing date for March 15, 2010. The BIA opposed the motion on March 1, 2010. Plaintiffs replied on March 8, 2010. The Court found this motion suitable for a decision without a hearing and vacated the March 15, 2010 hearing pursuant to Local Rule 230(g). Having considered the parties' arguments, declarations, and exhibits, and the record, this Court issues the following order.

**PRELIMINARY INJUNCTION MOTION**

**Standard of Review**

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008). As such, the Court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S.Ct. 365, 375 (2008). To prevail, the moving party must show : (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent a preliminary injunction; (3) that the balance of equities tips in the moving party's favor; and (4) than an injunction is in the public interest. *Id*. at 374.[3] In considering the four factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 542 (1987)); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).

**Likelihood of Success on Merits**

Pursuant to *Winter*, Plaintiffs must demonstrate they are "likely to succeed on the merits." 129 S.Ct. at 375-76. In this motion, however, Plaintiffs ignore the relevant inquiry–whether they are likely to prevail on the causes of action they assert in their complaint. As to the likelihood of success on the merits, Plaintiffs' argument consists of the following, in full:

> As evidenced by the attachments to the Complaint, the Plaintiffs are likely to prevail on their claim that they constitute the governing majority of the "Rollback" Tribal Council, that the BIA has not recognized their authority as the majority of said Council, and that the BIA has failed to effectively make any decisions regarding the issues presented to them. Consequently, the Plaintiffs are likely to prevail.

Pl. Memo., p. 9. The BIA points out that "[e]ven though establishing a likelihood of success on the merits is essential to obtain a preliminary injunction, Plaintiffs make only a few unsupported assertions on this issue and fail to offer a single argument as to the merits of any of their claims. [citation]. This

---

[3] Plaintiffs erroneously argue that this Court may apply a lesser standard than that set forth in *Winter v. Nat'l Res. Def. Council, Inc*., 129 S.Ct. 365, 375 (2008). In considering preliminary injunctions after *Winter*, Ninth Circuit cases have unanimously rejected this notion. *See e.g., Am. Trucking Ass'ns. Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable."); *Stormans Inc. v. Selecky*, 571 F.3d 960, 977 (9th Cir. 2009) (recognizing that the *Winter* court rejected the Ninth Circuit sliding scale test because it was "too lenient"); *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847-849-50 (9th Cir. 2009) (applying *Winter* factors rather than former sliding scale test).

alone is sufficient reason to deny their motion." Def. Opp., p. 6. This Court agrees. Plaintiffs' inadequate argument, lacking legal authority and analysis, is insufficient to establish the likelihood of success on the merits. Moreover, Plaintiffs' terse argument is unrelated to the claims in the complaint. None of Plaintiffs' claims relates to Plaintiffs' actions as the governing majority of the Rollback Tribal Council. Accordingly, Plaintiffs have failed to establish the likelihood of success on the merits of their claims.

Moreover, the BIA successfully argues that Plaintiffs are unlikely to succeed on the merits of their claims.

As to Plaintiffs' APA claims regarding the BIA's alleged failure to act in a timely manner, Plaintiffs must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in action on that duty. *Norton V. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004); *see also*, 5 U.S.C. §§555(b), 701(a)(2); 5 U.S.C. § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed"). Plaintiffs have failed to establish that the BIA has delayed unreasonably this action. Plaintiffs' argue that "[t]aking eight (8) months to reorganize the administrative record when such record should have already been organized clearly constitutes unreasonable delay. When it takes 22 months to decide an appeal due to BIA administrative error and failure to meet regulatory timeliness, this should evince unreasonable delay." Pl. Reply, p. 3.

Plaintiffs' unsupported statements that the BIA has caused unreasonable delay are contradicted by the evidence presented, including evidence attached to the Plaintiffs' complaint. The parties to the appeals challenged the conduct in 2007 and 2008. Decisions were issued in a timely manner, challenged, then reversed. The parties further appealed those decisions. In addition, the parties filed new challenges with the BIA, federal actions and multiple state court actions. The undisputed evidence demonstrates that the current appeals were filed in a timely manner March and April 2009. The appeals were consolidated on June 22, 2009. On July 13, 2009, the briefing schedule was amended to allow for a comment period–an amendment to which Plaintiffs agreed. The parties, including Plaintiffs, then submitted numerous comments about the structure of the administrative record and moved to supplement the record. "In light of the difficulties experienced by all parties in trying to work with the administrative record," James W. Porter, Attorney-Advisor at the Department of the Interior,

"determined to completely restructure the file into a strictly chronological database, and put the resulting record on compact discs." Porter Decl., ¶4. After resolving the comments and motions, and reorganizing a large and complicated administrative record, the BIA issued a scheduling order on February 19, 2010. Opening briefs are due on March 19, 2010. Thus, while the process has been long, nothing in the record indicates that the BIA has delayed unreasonably Plaintiffs' appeals.[4]

In addition, this Court lacks jurisdiction to consider challenges to agency actions that are not final. 5 U.S.C. §704; *Oregon Natural Desert Ass'n. v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir. 2006). Before Plaintiffs can challenge BIA decisions in federal court,"BIA regulations require the exhaustion of administrative remedies." *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988) (citing 25 C.F.R. §2.3(b)); *see also*, 25 C.F.R. §§2.1-.21; 43 C.F.R. §§4.310-.318. Pursuant to 5 U.S.C. §704, when an "agency rule dictates that exhaustion of remedies is required, the federal courts may not assert jurisdiction to review agency action until the administrative appeals are complete." *Id*. at 677. The BIA points out that each of Plaintiffs' claims challenges an agency action or future action, but none of the agency's actions is final.

Plaintiffs concede that they have not exhausted administrative remedies, but argue that exhaustion may not be required because irreparable injury may occur without immediate judicial relief. In addition, Plaintiffs argue that the "futility of the BIA process warrant[s] exception to the exhaustion requirement." Plaintiffs arguments are unpersuasive. As discussed more fully below, Plaintiffs fail to establish irreparable injury will occur without immediate judicial relief. Moreover, Plaintiffs fail to establish that the completion of the administrative process would be futile. *See White Mountain Apache Tribe*, 840 F.3d at 678; *United States v. Litton Industries, Inc.*, 462 F.2d 14, 18 (9th Cir. 1972) (administrative review not futile because plaintiffs' allegations of bias purely speculative). Because the BIA raises series questions as to the Court's subject matter jurisdiction over Plaintiffs' claims, Plaintiffs fail to establish the likelihood of success on the merits of their claims.

Plaintiffs cite 28 U.S.C. §1651 to support each of their claims for relief in the complaint. This provision allows this Court to "issue all writs necessary or appropriate." *Id*. "The Supreme Court has

---

[4] Although they BIA actions were timely, the decisions were oftentimes confusing and unreliable. *Timbisha III*, – F.Supp.2d. —, 2009 WL 3615971,*2-4, 13.

concluded that only exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." *United States v. Romero-Ochoa*, 554 F.3d 833, 839 (9th Cir. 2009) (citations and quotations omitted). "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U. S. Dist. Court*, 426 U.S. 394, 402 (1976). The writ "traditionally has been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Will v. United States*, 389 U.S. 90, 95 (1967). In determining whether to grant this extraordinary relief, the Court considers five factors:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. . . . (3) The [inferior court]'s order is clearly erroneous as a matter of law. (4) The [inferior court]'s order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The [inferior court]'s order raises new and important problems, or issues of law of first impression.

*Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977) (citations omitted).

In this motion, Plaintiffs disregarded their burden to demonstrate "a clear and indisputable right to the issuance of a writ." *U.S. v. Fei Ye*, 436 F.3d 117, 1121 (9th Cir. 2006). Indeed, Plaintiffs' memorandum contains no references to the statute or the factors required to warrant relief. In considering the factors sua sponte, the Court finds that they are not met. As to the first factor, Plaintiffs have a pending appeal that may grant the relief Plaintiffs desire. Briefing has not begun and Plaintiffs do not explain why they cannot request relief from the BIA through that process. As discussed below, Plaintiffs fail to demonstrate irreparable harm. Because there is no final agency action, this Court cannot determine whether the agency's actions are clearly erroneous. Nothing indicates that Plaintiffs raise an issue of first impression. Accordingly, Plaintiffs fail to establish the likelihood of success on their mandamus claims.

For the foregoing reasons, Plaintiffs fail to establish a likelihood of success on the merits of their claims.

### Irreparable Injury Absent an Injunction

Next, the Court considers whether Plaintiffs will suffer irreparable injury absent an injunction. "Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is *likely*

in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 129 S.Ct. At 375) (noting that the Supreme Court in *Winter* rejected the Ninth Circuit's "possibility of irreparable harm" test). Plaintiffs charge that the BIA's failure to process the appeals in a timely manner, repeated reversal of decisions, unwillingness to make decisions effective, and biased participation with one faction over another has caused the following irreparable harm to: (1) Plaintiffs' ability to govern the Tribe; (2) Plaintiffs' ability to operate sovereign governmental functions of the Tribe; (3) members of the Tribe, who in some instances have lost their primary sources of income; (4) Plaintiffs, in the form of economic loss caused by third parties that have erroneously relied on the BIA's decisions concerning leadership of the Tribe; (5) the Tribe's reputation; and (6) the welfare and safety of the members of the Tribe.

Some of the harm Plaintiffs claim is irreparable. "Typically, monetary harm does not constitute irreparable harm." *Cal Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009). "Economic damages are not traditionally considered irreparable because the injury *can later be remedied by a damage award*." *Id*. at 852 (emphasis in original). However, "intangible injuries, such as damage to...goodwill qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 2001).

Although Plaintiffs are suffering harm, they do not establish that the harm is caused by the BIA's actions or that the harm is likely to result in the absence of a preliminary injunction. As set forth in *Timbisha III*, the Bishop and Death Valley factions are causing each other harm, some of which is irreparable. *Timbisha III*, – F.Supp.2d–, 2009 WL 3615971, *1-7, 14-15. The financial hardships suffered by the Tribe members are caused by the constant battle of bank accounts between the two factions. Plaintiffs present no evidence to suggest that the BIA has acted to prevent any monies from being administered to the Tribe's members.

Considering the record, this Court is not persuaded that the harms of the Tribe are based "solely [on] the [BIA]'s mismanagement, incompetence and bias in handling its duties." The BIA has issued timely decisions on the questions properly presented, and has followed the procedures as set forth in the federal regulations. As noted in the Briefing Order and *Timbisha III*, – F.Supp.2d–, 2009 WL 3615971, *1-7, 14-15, questions presented by the factions "are most central manifestations of tribal sovereignty,

beyond the Federal Government's jurisdiction." The BIA has only been involved in this factional dispute to the extent that one faction challenges the actions of the other. While the BIA has attempted to identify a legitimate tribal council, the actions of the factions have made this task nearly impossible. This Court agrees with defendant Larry Echo Hawk, as he wrote in his February 2010 Briefing Order:

> The hardships being suffered by the Timbisha Shoshone people because of the internal dissension and divided government are very troubling to me. Ultimately, the only meaningful resolution to this problem must come from the Timbisha Shoshone people themselves. As the interested parties recognize, a final agency decision on the appealed questions is unlikely to result in the identification of a Tribal Council that can be acknowledged by the Federal Government. Therefore, I urge the contesting government factions to overcome the obstacles to cooperation to hold a unified tribal election. It would be my expectation that the tribal members purportedly disenrolled be allowed to vote; and I would encourage the use of an agreed neutral facilitator to ensure the validity of the election process and results. My staff and I will provide support as needed and requested to accomplish the important goal of putting a functioning, recognized government in place.

Pursuant to this letter, the BIA makes clear that its interest is in helping to lessen the harms of the Tribe by encouraging the factions to work together. Thus, Plaintiffs have failed to establish that they will suffer harm that is "immediate, direct, and significant" unless this Court postpones or dispenses with the BIA's current appellate review as scheduled. *Colwell v. Department of Health Servs.*, 558 F.3d 1112, 1128 (9th Cir. 2009).

In addition, the purpose of a a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981). However, a "preliminary injunction can take two forms:"

> A prohibitory injunction prohibits a party from taking action and "pre-serve[s] the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988); *see also Heckler v. Lopez*, 463 U.S. 1328, 1333, 104 S. Ct. 10, 77 L. Ed. 2d 1431 (1983) (a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits"). A mandatory injunction "orders a responsible party to 'take action.'" *Meghrig v. KFC Western.*, 516 U.S. 479, 484, 116 S. Ct. 1251, 134 L. Ed. 2d 121 (1996). A mandatory injunction "'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). Plaintiffs request a mandatory injunction to require the BIA make specific determinations on issues

10

1 currently pending.  In general, mandatory injunctions "are not granted unless extreme or very serious
2 damage will result and are not issued in doubtful cases or where the injury complained of is capable of
3 compensation in damages." *Anderson*, 612 F.2d at 1115.  As it is doubtful whether Plaintiffs will
4 succeed on the merits of their claims in this action, and many of the harms may be compensated, a
5 mandatory injunction is improper.

**Harm to Defendants**

The BIA would be harmed if this Court were to issue a mandatory injunction on issues that are not final, have not been exhausted, and are not ripe for review.  Exhaustion of remedies serves the purpose of giving the agency an opportunity to correct its own mistakes and also promotes efficiency. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  Furthermore, the agency has an interest in developing a full record and using its expertise to consider administrative questions. *Id*.  These interests would be harmed if this Court were to grant Plaintiffs' requested relief.

**Public Interest**

As a final factor, the Court considers the public interest.  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376-77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists come critical public interest that would be injured by the grant of preliminary relief." *Indep. Living*, 572 F.3d at 659.

The public interest is promoted if this Court exercises restraint in issuing the type of preliminary injunction requested by the Plaintiffs.  Although the Tribe and its members would be benefit if the dispute between the factions ended, tribal self-determination and self-governance are important to the public interest.  The Court's refusal to meddle in the internal affairs of the Tribe benefits the public.  In addition, the public has an interest to promote and preserve a judicial system that adheres to the rule of law.  Plaintiffs seek an order from this Court to require the BIA to act without allowing the department to first consider the issue or to issue a decision that is final.  To allow Plaintiffs' to ignore the well-settled rules of finality and exhaustion would cause confusion in a judicial system that thrives on consistency and predictability.

## Conclusion

As set forth above, Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their claims. Although they seek an "extraordinary measure," Plaintiffs neglect to establish that they are entitled to such relief. In addition, the BIA raises serious jurisdictional issues to Plaintiffs' claims, further demonstrating that Plaintiffs are unlikely to succeed on the merits of their claims. Although Plaintiffs establish that they are suffering harm, Plaintiffs fail to establish that the harm is caused by the BIA or that harm will occur unless this Court intervenes in the current appellate process. Plaintiffs seek a preliminary injunction that go beyond preserving the status quo to require the BIA to act on issues that the BIA has not yet had an opportunity to develop fully. The public interest in protecting the well-settled law of the exhaustion of administrative remedies favors this Court's restraint. Having considered the aforementioned factors, the balance of equities tips in favor of the BIA's opposition to Plaintiffs' motion.

## ORDER

For the foregoing reasons, this Court DENIES Plaintiffs' motion for a preliminary injunction.

IT IS SO ORDERED.

**Dated:  March 16, 2010**                              /s/ Lawrence J. O'Neill
                                                        UNITED STATES DISTRICT JUDGE